Argued and submitted January 21, affirmed April 20, reconsideration denied August 5, petition for review denied August 30, 1988 (306 Or 527)

# BRANCH,
*Appellant - Cross-Respondent,*

*v.*

# HENSGEN,
*Respondent - Cross-Respondent - Cross-Appellant,*

# WYETH LABORATORIES,
*Respondent - Cross-Appellant - Cross-Respondent,*

*and*

# WRIGHT et al,
*Cross-Respondents.*

(A8208-04816; CA A38355)

752 P2d 1275

Richard P. Noble, Portland, argued the cause for appellant - cross-respondent Clarlisa A. Branch. With him on the

briefs were Kathryn H. Clarke and Richard P. Noble, P.C., Portland.

Kim Jefferies, Portland, argued the cause for respondent - cross-respondent - cross-appellant Charles M. Hensgen, M.D. With her on the briefs were David C. Landis and Wood, Tatum, Mosser, Brooke & Landis, Portland.

Ridgway K. Foley, Jr., P.C., Portland, argued the cause for respondent - cross-appellant - cross-respondent Wyeth Laboratories. With him on the briefs were Kenneth D. Renner, Cecilia Lee, and Schwabe, Williamson & Wyatt, Portland.

Ralph C. Spooner and Spooner & Much, P.C., Salem, filed the brief for cross-respondent E. R. Squibb & Sons, Inc.

No appearance by cross-respondents H. Gary Wright, M.D., and State of Oregon.

Before Warden, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals a judgment in favor of defendants in this action to recover damages for medical malpractice and failure to warn of the dangers associated with the administration of penicillin. There were two proceedings. The first, dealing strictly with the Statute of Limitations issue, was decided in plaintiff's favor. In the second, the jury found in favor of the defendants on the merits. Plaintiff appeals the judgment on the merits; defendants Hensgen and Wyeth filed separate cross-appeals from the ruling on the Statute of Limitations. We reverse the trial court decision regarding the Statute of Limitations and therefore reach no other issues presented by the parties.

In April, 1978, plaintiff, a student at Oregon State University, went to the infirmary. She tested positive for strep throat and was treated with penicillin. Through April and May her symptoms persisted. She returned two more times to the infirmary. Both times she continued to test positive for strep throat and was given penicillin. During that time, she suffered a rash, swollen joints, fever and prostration.

On June 5, plaintiff was still very ill and consulted defendant Hensgen, who consulted the university infirmary regarding plaintiff's history. He performed additional tests and also diagnosed her as having strep throat. On June 6, he admitted plaintiff to the hospital and ordered that she be given a long acting form of penicillin. Plaintiff's condition steadily worsened.

While still in the hospital, plaintiff was diagnosed as having an allergic vasculitis due to penicillin. She was treated with cortisone, which successfully alleviated some of her symptoms. However, the long acting injectable penicillin administered when she was admitted to the hospital continued to affect her adversely. On June 22, she was diagnosed as suffering from progressive kidney failure. By August 1, 1978, all consultants agreed that her kidney failure was permanent and was due to the penicillin.[1]

---

[1] On March 25, 1979, plaintiff was found to have "Wegener's Granulomotosis," a rare disease that can appear in the form of kidney disease. It frequently involves a bacterial infection like strep throat. There was testimony that all of plaintiff's problems in June and July, 1978, including her kidney loss, were due to that disease and not to penicillin.

Plaintiff testified that she has never been told a definitive cause of her kidney failure; however, she was aware early in her hospitalization in 1978 that she was having an allergic reaction to penicillin and that it was one potential cause of her kidney failure. In December, 1981, plaintiff underwent a particularly painful dialysis. At that time, she decided to learn more about her medical care and treatment. In January, 1982, she obtained a *Physician's Desk Reference* and reviewed her current medication. She discovered that many of the symptoms that she had experienced when she first consulted Hensgen were listed as typical adverse reactions to penicillin.

Several months later, she consulted an attorney. The attorney's research allegedly disclosed that penicillin is known to cause permanent kidney damage and that the manufacturer, Wyeth, may not have provided an adequate warning on the penicillin package of possible adverse side effects. On August 10, 1982, plaintiff filed a complaint against Hensgen and Wyeth. We agree with defendants' contention that the action was not timely.

Generally, the Statute of Limitations in a tort action begins to run when the claim or cause of action accrues. *Duyck v. Tualatin Valley Irrigation Dist.,* 304 Or 151, 161, 742 P2d 1176 (1987). A cause of action does not accrue until the occurrence of harm or injury. " 'Injury' in the legal sense means a physical injury which the plaintiff knows or as a reasonable person should know was caused by the defendant." *Dortch v. A.H. Robins Co., Inc.,* 59 Or App 310, 319, 650 P2d 1046 (1982).

We recently held in *Eldridge v. Eastmoreland General Hospital,* 88 Or App 547, 550, 746 P2d 735 (1987), that

"discovery occurs, and the time begins to run, when the plaintiff knows, or through diligent inquiry should know, facts from which a reasonable factfinder could conclude that the injury was caused by an act of the defendant that was negligent."

Therefore, plaintiff had a duty to use due diligence in her effort to discover the facts. *Georgeson v. State of Oregon,* 75 Or App 213, 216, 706 P2d 570, *rev den* 300 Or 332 (1985); *Duncan v. Augter,* 62 Or App 250, 255, 661 P2d 83, *rev den* 295 Or 122 (1983). The delay in filing her claim would only be excused if

she could not have discovered the alleged negligence, through diligent inquiry, before August, 1980.

In August, 1978, all the consultants believed that plaintiff's problems were associated with a penicillin reaction. She was aware then that her reaction and loss of kidney function was or could be due to the administration of penicillin by Hensgen and that he had had the drug administered to her after she had demonstrated an allergic reaction.

> "A plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured, (2) that the injury can be attributed to an act of the alleged tortfeasor, and (3) that the act of the alleged tortfeasor was somehow negligent. We do not suggest that a plaintiff in a malpractice case can never reasonably determine that he has a cause of action without consulting a doctor or a lawyer. A reasonable person may well conclude, before receiving any expert opinion, that he has been injured and that the injury was caused by a negligent act or omission of the alleged tortfeasor." *Hoffman v. Rockey,* 55 Or App 658, 663, 639 P2d 1284, *rev den* 292 Or 722 (1982).

Plaintiff was aware almost immediately after she was given penicillin that she had been injured and that Hensgen had administered penicillin to her after she had shown signs of an allergy to it. Once those facts were known, her duty to discover was triggered and the Statute of Limitations began to run. Plaintiff had enough information to make a claim against defendants in August, 1978. Her action is barred.

Affirmed.